**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SEDRICK HORN,

      Petitioner,

v.                                                          Case No.   3:14-cv-603-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## O R D E R

    Petitioner Sedrick Horn, an inmate of the Florida penal system, initiated this

action by filing a pro se Petition (Doc. 1) for writ of habeas corpus pursuant to 28

U.S.C. § 2254.   Horn challenges his March 29, 2011, state court (Duval County,

Florida) convictions for sale and delivery of cocaine and marijuana, for which he

received concurrent sentences of twelve and five years imprisonment after entering

pleas of guilty.   Horn raises one ground for relief, premised on receiving

constitutionally ineffective assistance of counsel.   Respondents have responded.

See Answer to Petitioner's Habeas Petition (Doc. 12) (Response).[1]   Horn has replied.

See Petitioner's Reply Pleading (Doc. 13) (Reply).   This case is ripe for review.

---

[1] Respondents also filed exhibits identified by letters A-O.   See Doc. 13.   The
Court refers to the exhibits as "Ex." followed by their identifying letter.

## I.   **Procedural History**

Horn filed an amended motion for postconviction relief in state court.[2]   Ex. K at 12-17.   Pursuant to former Florida Rule of Criminal Procedure 3.850(d) (2012), the state trial court summarily denied Horn's motion without an evidentiary hearing or responsive pleading from the State, finding that the "'files[ ] and records of the case conclusively show that the movant is entitled to no relief. . . .'"[3]   Ex. K at 28-56; 29. Horn appealed to the First District Court of Appeal (Ex. K at 57-65), but no appellate briefs were filed.   The First District Court of Appeal summarily affirmed per curiam without issuing a written opinion.   Horn v. State, 134 So. 3d 455 (Fla. 1st DCA 2014); Ex. L.   Horn moved for rehearing (Ex. M), which the First District of Appeal denied (Ex. N).   The mandate issued on April 9, 2014.   Ex. O.

## II.   **Exhaustion and Procedural Default**

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction.   See 28 U.S.C. § 2254(b), (c).   To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.   Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted).   As the United States Supreme Court has

---

[2] Because Respondents fully set forth the procedural history, see Response at 1-2, the Court will limit its recitation.

[3] Effective July 1, 2013, Florida Rule of Criminal Procedure 3.850 was revised, and subsection (d) was substantially amended and redesignated as (f).   In re Amendments to Fla. Rules of Crim. Pro. and Fla. Rules of App. Pro., 132 So. 3d 734 (Fla. 2013).

explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28 U.S.C.
> § 2254(b)(1), thereby giving the State the ""opportunity to
> pass upon and correct" alleged violations of its prisoners'
> federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115
> S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting
> Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30
> L.Ed.2d 438 (1971)).   To provide the State with the
> necessary "opportunity," the prisoner must "fairly present"
> his claim in each appropriate state court (including a state
> supreme court with powers of discretionary review),
> thereby alerting that court to the federal nature of the
> claim.   Duncan, supra, at 365-366, 115 S.Ct. 887;
> O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728,
> 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Boerckel, 526 U.S. at 845 ("[S]tate

prisoners must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review

process.")

Petitioners must "present their claims to the state courts such that the

reasonable reader would understand each claim's particular legal basis and specific

factual foundation."   Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344-45 (11th

Cir. 2004) (citing Picard, 404 U.S. at 277).   As explained by the Eleventh Circuit:

> [T]he prohibition against raising nonexhausted claims in
> federal court extends not only to broad legal theories of
> relief, but also to the specific assertions of fact that might
> support relief.   For example, habeas petitioners may not
> present particular factual instances of ineffective
> assistance of counsel in the federal petitions that were not
> first presented to the state courts.

Id. at 1344.   "In sum, to preserve a claim of ineffective assistance of counsel for

federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." Id.  Thus,

> [f]ederal habeas petitioners are undoubtedly on their strongest footing with regard to the exhaustion requirement when their federal claims are carbon copies of the claims they presented to the state courts. Such reproduction leaves no question that the claims presented to the federal court are the same as those that were presented to the state court. But we do not demand exact replicas. We recognize that habeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance

Id.  "The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015); see also French v. Warden, Wilcox State Prison, 790 F.3d 1259, 1270-71 (11th Cir. 2015), cert. denied, 136 S. Ct. 815 (2016).

"[W]hen a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar." McNair v. Campbell, 416 F.3d 1291, 1305 (2005) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); see also Boerckel, 526 U.S. at 848; Vazquez v. Sec'y, Fla. Dep't of Corr., 827 F.3d 964, 966 (11th Cir. 2016). Notwithstanding a procedural default, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted).

4

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. <u>Id.</u>; <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

<u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003).

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus.   <u>See</u> 28 U.S.C. §2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016).

"'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 132 S. Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id.</u> § 2254(d)(2).  A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.   <u>Id.</u> § 2254(e)(1); <u>Ferrell v. Hall</u>, 640 F.3d 1199, 1223 (11th Cir. 2011).
>
> . . . "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011)] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.

Ct. 1166, 155 L.Ed.2d 144 (2003)).  The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error.  See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S. Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013).

Before applying AEDPA deference, the federal habeas court must first identify the last state court decision that evaluated the claim on the merits.  See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[4]  Richter, 562 U.S. at 99; see also Johnson v. Williams, --- U.S. ---, 133 S. Ct. 1088, 1096 (2013).

Where the last adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'"  Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98).  "[A] habeas court must determine what arguments

---

[4] The presumption is rebuttable and may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Williams, 133 S. Ct. at 1096-97.  However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances."  Williams, 133 S. Ct. at 1096.

or theories supported or, as here, could have supported, the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision of [the]

Court." <u>Richter</u>, 562 U.S. at 102; <u>see also</u> <u>Wilson</u>, 834 F.3d at 1235; <u>Marshall</u>, 828

F.3d at 1285.   To determine which theories could have supported the state appellate

court's decision, the federal habeas court may look to a state trial court's previous

opinion as one example of a reasonable application of law or determination of fact;

however, the federal habeas court is not limited to assessing the reasoning of the

lower court.   <u>Wilson</u>, 834 F.3d at 1239.   As such,

> even when the opinion of a lower state court contains
> flawed reasoning, [AEDPA] requires that [the federal
> court] give the last state court to adjudicate the prisoner's
> claim on the merits "the benefit of the doubt," <u>Renico [v.
> Lett</u>, 449 U.S. 766, 733 (2010)] (quoting [<u>Woodford v.
> Visciotti</u>, 537 U.S. 19, 24 (2002)]), and presume that it
> "follow[ed] the law," [<u>Woods v. Donald</u>, --- U.S. ---, 135 U.S.
> 1372, 1376 (2015)] (quoting <u>Visciotti</u>, 537 U.S. at 24).

<u>Id.</u> at 1238; <u>see also</u> <u>Williams</u>, 133 S. Ct. at 1101 (Scalia, J., concurring).

## IV.   Ineffective Assistance of Counsel

To prevail on this claim, a petitioner "must meet both the deficient

performance and prejudice prongs of <u>Strickland</u>."   <u>Wong v. Belmontes</u>, 558 U.S. 15,

16 (2009) (per curiam) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." 466 U.S. at 688, 104 S. Ct. 2052.   A
> court considering a claim of ineffective assistance must
> apply a "strong presumption" that counsel's
> representation was within the "wide range" of

reasonable professional assistance.  Id., at 689, 104 S. Ct. 2052.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id., at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Id., at 693, 104 S. Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104.  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted); see also Lynch v. Sec'y, Fla. Dep't of Corr., 776 F.3d 1209, 1228 n.14 (11th Cir. 2015).

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must demonstrate that counsel's performance was deficient.  See id. at 56-59; Lynch, 776 F.3d at 1218.  To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.  Alternatively, where a plea offer has lapsed or been rejected because of counsel's deficient performance, the petitioner must "show a

reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or sentence of less prison time." <u>Missouri v. Frye</u>, -- U.S. --, --, 132 S. Ct. 1399, 1409 (2012).   A complete showing of prejudice in this circumstance requires the petitioner to show a reasonable probability that he would have accepted the earlier plea offer and that neither the prosecution nor the court would have prevented the offer from being accepted or implemented.   <u>Id.</u> at 1410.

Finally, a state court's adjudication on the merits of an ineffectiveness claim is accorded great deference under AEDPA.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S. Ct. 1933.   And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.   <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).   Thus, the standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, "and when the two apply in tandem, review is 'doubly' so[.]"   <u>Richter</u>, 562 U.S. at 105 (quoting <u>Knowles</u>, 556 U.S. at 123).

## V.   <u>Evidentiary Hearing</u>

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 44 (2007) (citation omitted).   "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## VI.   <u>Findings of Fact and Conclusions of Law</u>

### A. <u>Exhaustion</u>

Horn asserts in his Petition that he had an "involuntary plea agreement predicated on misadvice of defense counsel that mislead (*sic*) defendant as to the consequences of his plea." Doc. 1 at 5.   Specifically, he contends that defense counsel misled him "as to the length of prison sentence he would receive by entering into an open plea to the trial court where the state would recommend a sentence of two to five years; however no such recommendation was made and Defendant was sentenced to an overall term of twelve years imprisonment."[5]   <u>Id.</u>   Horn does not

---

[5] Horn fails to cite the Sixth Amendment or even the common term, "ineffective assistance of counsel" in his federal Petition.   However, he does articulate that he received "misadvice of defense counsel" and that he was "mislead (*sic*) by defense counsel." Doc. 1 at 5.   The federal constitutional claim was, however, clearly identified in his state motion, <u>see</u> Ex. K at 13.   Giving Horn the

articulate how the outcome would have been different absent counsel's alleged deficient performance.   In short, Horn claims that he entered an open plea with the expectation that the State would recommend a sentence of two to five years, and that counsel performed deficiently by misleading him as to the consequences of the plea.[6]

In his state motion for postconviction relief, Horn asserted that his "nolo contendere plea was not voluntary, competent, or intelligently entered as a proximate result of being deprived of effective assistance of counsel, in violation of the 6th and the 14th Amendment of the United States Constitution."[7]  Ex. K at 13.   Specifically, he contended that "[c]ounsel affirmatively misadvised and represented to Defendant that the State had offered a term of two to five years upon the entry of a guilty or nolo

---

benefit of the doubt, the Court will consider his Petition as fairly presenting a federal constitutional claim.

[6] In Horn's Reply (Doc. 13), he alleges for the first time specific details regarding alleged plea negotiations.   He asserts that his first attorney negotiated a thirty-six month plea offer but agreed to return to the State to ask for less time.   Doc. 13 at 2.   Subsequently, his second attorney also approached him with the thirty-six month offer and likewise decided to return to the State to ask for less time.   Horn asserts that at the next court appearance, the State offered a two year sentence to dispose of the case.   He contends, for the first time, that his attorney advised him "to turn down the favorable two year offer because after consulting with the trial judge in chambers, the judge had promised to impose a sentence lesser than 2 years if the petitioner enters an open guilty plea and lie about any promises during the plea colloquy."  Doc. 13 at 3.   In sum, Horn now contends for the first time in his Reply that he rejected a negotiated offer for two years, knowingly lied during the plea colloquy on the advice of counsel, and expected to receive a sentence of less than two years.   As Horn raises these arguments for the first time in his Reply brief, the Court declines to consider the merits, see Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005), although the Court notes the inconsistencies between Horn's Reply, the Petition, and the state motion and is generally skeptical of such latebreaking assertions.

[7] Despite Horn's assertion that he pled nolo contendere, the record reflects that he pled guilty.   See Ex. K at 34-36.

contendere plea, which he accepted such representation." <u>Id.</u> at 13.   He also asserted that "[c]ounsel misrepresented to the Court that the nolo contendere plea was an 'open plea' when, in fact, it was a negotiated plea offer with the State that induced him to forego jury trial and enter the plea in his best interest." <u>Id.</u> at 14. Furthermore, he contended that "[d]efense counsel never presented to the Court the gist of the plea negotiation with the State and the 'deal' for his induced plea and indicated it was an 'open plea.'" <u>Id.</u>   He claimed that counsel performed deficiently by "induc[ing], encourage[ing], or badger[ing]" him into a nolo contendere plea and waiver of jury trial.   <u>Id.</u>   He asserted that absent the deficient performance of counsel, "he would not have entered the nolo contendere plea and would have proceeded to trial by jury." <u>Id.</u>   In other words, Horn claimed that he was induced to enter a negotiated plea that guaranteed a sentence of two to five years, and that counsel performed deficiently by misrepresenting to the court that it was an open plea and failing to present the "deal" to the court.[8]

Respondents contend that Horn presents a different claim in his federal Petition than he presented in his state motion for postconviction relief and that his new federal claim is unexhausted and procedurally defaulted.   Response at 8. Indeed, there is a difference between alleging that counsel misled him as to the consequences of an open plea and alleging that counsel induced him to enter a negotiated plea but failed to present the agreement to the court.   Either way, and for

---

[8] Reading Horn's state claim liberally, the Court acknowledges the possibility that he may have also implied that counsel performed deficiently by misrepresenting the "deal" to him.   <u>See</u> Ex. K at 13.

whatever reason, Horn claims that he expected a sentence of two to five years and received a sentence of twelve years.[9]   In that sense, Horn's state and federal claims are similar and overlap to some extent, and the gravamen of his complaint is the same.   But while Horn may clarify the arguments he presented to the state courts, he may not change the substance of his arguments on federal collateral review.   See Kelley, 377 F.3d at 1344.   He may not present broad legal theories of relief or specific assertions of fact that might support relief in his federal Petition if he did not present them first to the state courts.   Id.   His claims may not "assume[ ] a strikingly different hue."   Id. at 1347.   The Court, however, need not decide this question. Even if the claim is unexhausted, the Court may deny Horn's claim "on the merits, notwithstanding the failure of the applicant to exhaust the remedies of the State." 28 U.S.C. § 2254(b)(2).   To that end, the Court will address the merits.

**B. Merits**

The state trial court identified the two-pronged Strickland standard for claims of ineffective assistance of counsel.   The court also acknowledged that a defendant may not seek to go behind his sworn testimony at a plea hearing in a postconviction motion.   The court then found that Horn's claim was conclusively refuted by the record in the case for the following reasons:

> First, [the Defendant] cannot go behind his own sworn testimony.   During the plea colloquy, the Defendant stated that he understood that he was facing up to 15 years and that he wanted to enter a plea.   (Ex. C, pp. 5-6).   He stated that no one had promised him anything to enter his

---

[9] In his Reply, he claims that he expected a sentence of less than two years. Doc. 13 at 3.

plea.   (Id. at p.6).   Most significantly, he testified that no one, including his attorney, had promised or suggested that he would receive a certain sentence.   (Id. at pp. 6-7). Finally, after the trial court confirmed that he had received no promises, the Defendant, again, acknowledged that he knew he was facing up to 15 years if he entered his plea. (Id. at p.7).

Additionally, the Defendant was standing in open court when his attorney made the following statement: "At this time Your Honor, my client has authorized me to withdraw his plea of not guilty and enter a plea of guilty. ***There is no agreed upon disposition with the State so we'd [sic] ask that this be set out for a sentencing hearing in a week or two.***"   (Id. at p.3) (emphasis supplied).   Further, the Defendant acknowledged that he had received and signed a "blue form" that sets out a defendant's rights.   (Id. at p.7).   The "blue form" clearly states 1) "I have not been offered any hope of reward, better treatement, or certain type of sentence to get me to enter this plea.   I have not been promised by anyone, including my attorney, that I would actually serve any certain amount of time;" and 2) "This form represents the sole and complete agreement between myself and the State."   (Ex. A).   All of this occurred during the plea colloquy where the Defendant confirmed that he had graduated, could read and write, was not under the influence of any drug or alcoholic beverage, and had not been coerced or threatened by anyone to enter his plea.   (Ex. C, ppp. 6-8).

On this record, the Defendant cannot possibly claim that, somehow, he was mislead by his attorney that there was, in fact, a negotiated plea deal with the State for a sentencing range between 2 and 5 years.   The court did not simply make the Defendant aware of the maximum sentence he was facing, but asked him directly whether anyone, including his attorney had promised that he would receive a certain sentence.   Cf., Ely v. State, 13 So.3d 167, 168 (Fla. 2d DCA 2009) (explaining defendant's awareness of maximum sentence does not conclusively refute defendant's claim of ineffective assistance when allegations involve advice from attorney that defendant's sentence would be much less than maximum).   Defendant was standing in open court when his attorney said that the

> plea was given without any agreed upon disposition and he
> signed a written form that essentially acknowledged the
> same.    Relief is denied as to Ground I.

Ex. K at 29-31.    The First District Court of Appeal affirmed per curiam without written opinion.    Ex. L.

The Court presumes that the First District Court of Appeal's summary affirmance was on the merits.    See Richter, 562 U.S. at 99-100.    Therefore, the adjudication is entitled to deference under § 2254(d), and the Court applies the Richter test to determine which arguments or theories could have supported the appellate court's decision.    Wilson, 834 F.3d at 1235; see also Marshall, 828 F.3d at 1285.    In this endeavor, the Court may rely on the state trial court's opinion as one example of a reasonable application of law, but the Court is not limited to assessing the reasoning of the state trial court.    See Wilson, 834 F.3d at 1239.    The Court also gives the First District Court of Appeal the benefit of the doubt and presumes that it followed the law in affirming the state trial court's denial of Horn's claim.    See id. at 1238.

A defendant's solemn declarations in court carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that defendants who make statements under oath at a plea colloquy bear a heavy burden to show his statements were false) (quotation and citation omitted).    Thus, the defendant's representations at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings."    Id. at 73-74; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir.

1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that counsel's representation was deficient).   As such, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."   Allison, 431 U.S. at 74.

Horn presented no evidence contradicting the transcript of the plea colloquy. In describing his claim, he described no detailed facts but rather asserted conclusions. Given his statements under oath at the plea colloquy, Horn "[could not] possibly claim that, somehow, he was mislead by his attorney that there was, in fact, a negotiated plea deal with the State for a sentencing range between 2 and 5 years."   Ex. K at 31. Likewise, the record of the plea colloquy refutes Horn's altered claim in his federal Petition that he entered an open plea with the expectation that the State would recommend a sentence of two to five years, and that counsel performed deficiently by misleading him as to the consequences of the plea.   Horn has not demonstrated that counsel performed deficiently, and even if he had properly pled prejudice in his federal Petition, he has not demonstrated prejudice under either Hill or Frye.   In sum, "a competent, knowledgeable defendant can make an informed, voluntary choice to plead guilty and [ ] he subsequently cannot fault his attorney for ineffective assistance of counsel after receiving an unexpected sentence."   Stano, 921 F.2d at 1154.

The state trial court's opinion provided a reasonable basis for the First District Court of Appeal's summary affirmance.   The state trial court's finding that the

record conclusively refuted Horn's allegations was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.   Horn's Petition is due to be denied.

Accordingly it is hereby

**ORDERED:**

1. Horn's Petition Under § 2254 for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Horn appeals the denial of the Petition, the Court denies a certificate of appealability.[10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

---

[10] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-Eli v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Here, after consideration of the record as a whole, a certificate of appealability is not warranted.

4.  The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of January, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

lpb
Copies to:
Sedrick Horn, DOC # U33804
Counsel of record